UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Cortlen Delva,<br><br>                                    Plaintiff,<br><br>          -against-<br><br>Trans Union LLC a/k/a TransUnion; Experian Information Solutions, Inc.; Equifax Information Services LLC; Celtic Bank,<br><br>                                    Defendants. | Civil Action<br>Case No.:<br><br><br>**COMPLAINT** |

Plaintiff Cortlen Delva ("Plaintiff"), by and through his attorneys, Petroff Amshen LLP, as and for his complaint against the defendants named herein, hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1.       Plaintiff brings this action against Trans Union LLC a/k/a TransUnion ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax") (collectively, the "CRAs"), and Celtic Bank ("Celtic"), arising from their willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and its implementing Regulation V, 12 C.F.R. Part 1022.

## PARTIES

2.       Plaintiff is an individual resident of the State of New York, residing in Kings County. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

3.       TransUnion is a Delaware limited liability company, and is a "consumer reporting agency," as defined by 15 U.S.C. §§ 1681a(f) and 1681a(p).

4.       Experian is a corporation organized and existing under the laws of the State of Ohio and is a "consumer reporting agency" as defined by 15 U.S.C. §§ 1681a(f) and 1681a(p).

1

5.     Equifax is a limited liability company organized under the laws of the State of Georgia, and is a "consumer reporting agency," as defined by 15 U.S.C. §§ 1681a(f) and 1681a(p).

6.     Celtic is a state-chartered bank, organized under the laws of the State of Utah. Celtic is a "furnisher" of information as contemplated by 15 U.S.C. § 1681s-2.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the harm suffered by Plaintiff.

## STATEMENT OF FACTS

9.     Plaintiff is the holder of some credit accounts appearing on his credit reports, including a CELTIC/CONT account (Account No. 534636022467) reported with a balance of $783.00, and a MIDLAND CRED account (Account No. 33028) reported with a balance of $761.00 (collectively, the "Accounts").

10.     The Celtic/Cont account appeared not only under the original furnisher but also under LVNV Funding, causing the same underlying obligation to appear more than once on Plaintiff's credit reports.

11.     Likewise, the Midland Cred account appeared in multiple versions across the CRAs.

12.     As a result, the Accounts were being reported in a duplicated and misleading manner that made it appear as though Plaintiff owed multiple separate debts arising from the same obligations.

13.     The Accounts should reflect accurate and consistent reporting, rather than appearing multiple times or being reported by different furnishers as if they were separate obligations.

14.     Plaintiff reviewed a credit report dated December 3, 2025, which reflected the derogatory and duplicative reporting of the Accounts.

15.     Plaintiff submitted formal written disputes to the CRAs on December 17, 2025, to rectify the materially inaccurate and damaging information appearing on his credit reports.

16.     Plaintiff's dispute letters were clear, specific, and supported by detailed facts.

17.     Plaintiff's formal notice of dispute included a written statement explaining that the Accounts were being inaccurately reported, and requested that the CRAs investigate and correct the inaccurate reporting.

18.     Plaintiff's dispute also included a copy of Plaintiff's identification, a copy of Plaintiff's Social Security card, and proof of address to verify Plaintiff's identity and ensure that the CRAs could properly process the dispute.

19.     Despite the submission of clear and specific disputes, Plaintiff did not receive positive results of investigation from the CRAs regarding the Accounts.

20.     Other accounts that Plaintiff disputed at the same time were corrected or updated by the CRAs following the investigation process.

21.     However, the inaccurate and duplicative reporting of the Accounts persisted even after Plaintiff's dispute.

22.     Celtic failed to properly review its own internal records or reconcile the duplicated and inconsistent reporting of the Accounts.

3

23. The CRAs, in turn, accepted the Celtic's unverifiable and inaccurate data without meaningful scrutiny, allowing the derogatory tradelines associated with the Accounts to remain unchanged.

24. Upon receiving Plaintiff's formal dispute, Defendants were under a clear statutory obligation to conduct a reasonable and good-faith investigation of the disputed tradelines.

25. Instead, Defendants appear to have performed a superficial and likely automated internal review that ignored both the substance of the dispute and the readily identifiable duplication associated with the Accounts.

26. Celtic knowingly or recklessly re-certified the inaccurate reporting.

27. Plaintiff later reviewed another credit report dated March 4, 2026, which showed that the inaccurate and duplicative reporting of the Accounts remained substantially unchanged following Plaintiff's dispute.

28. The post-dispute credit reports contain internal contradictions that reflect a failed and inconsistent reinvestigation process by the CRAs.

29. As a direct and proximate result of Defendants' unlawful actions and omissions, Plaintiff's credit reports have contained and continue to contain serious, damaging inaccuracies.

30. This inaccurate negative information has directly and adversely affected Plaintiff's credit scores.

31. The continued inaccurate reporting of the Accounts has caused Plaintiff significant financial hardship.

32. As a result of the derogatory and duplicative information appearing on Plaintiff's credit reports, on March 11, 2026, Plaintiff was denied a Discover credit card on grounds expressly tied to delinquency and collection reporting.

33. Plaintiff has been denied credit, experienced difficulty securing stable housing, and struggled to regain financial stability following a period of unemployment.

34. Plaintiff has therefore suffered actual economic harm, including the inability to obtain credit or being forced to accept credit, if available at all, on substantially less favorable terms than he would otherwise qualify for, as well as non-economic damages including frustration, anxiety, humiliation, and emotional distress resulting from the damage to his financial reputation and the ongoing effort required to correct the inaccurate reporting.

## CAUSES OF ACTION

### COUNT I: Willful Noncompliance With The FCRA Against Celtic
### (Violations of 15 U.S.C. § 1681s-2(b))

35. Plaintiff incorporates by reference each of the preceding paragraphs.

36. Celtic is a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

37. Celtic received notice of Plaintiff's dispute from the CRAs.

38. Celtic provided information relating to Plaintiff to the CRAs that it knew or had reasonable cause to believe was inaccurate.

39. Specifically, Celtic reported the CELTIC/CONT account (Account No. 534636022467) as reflecting a balance of $783.00 owed by Plaintiff, while simultaneously allowing the same underlying obligation to appear in Plaintiff's credit reports under LVNV Funding as a separate and independent tradeline, creating the false and misleading appearance that Plaintiff owed multiple separate debts arising from the same obligation.

40. Upon receipt of notice from the CRAs, Celtic had reasonable cause to believe that the information it was furnishing was inaccurate, including because Plaintiff's dispute expressly

identified the duplicative nature of the reporting, Celtic had direct knowledge of its own account and its relationship to the LVNV Funding tradeline, and Celtic lacked any legitimate basis to verify that the duplicated reporting accurately reflected a separate and independent obligation owed by Plaintiff.

41.    Notwithstanding its notice of the dispute, Celtic continued to furnish information regarding the CELTIC/CONT account to the CRAs, verifying the account status and balance as accurate.

42.    Celtic provided information concerning the CELTIC/CONT account to the CRAs without ensuring that the information was accurate, complete, or verifiable, and without reconciling the duplicative reporting arising from the same underlying obligation.

43.    Celtic violated its duties under 15 U.S.C. § 1681s-2(b) by failing to: (1) conduct a reasonable and proper investigation with respect to the disputed information; (2) review all relevant information provided by the CRAs concerning the dispute; (3) report the results of its investigation to the CRAs; and (4) if the investigation found the information to be inaccurate or incomplete or if it could not be verified, instruct the CRAs to modify, delete, or permanently block the reporting of that item of information.

44.    Celtic's conduct was willful.

45.    Celtic's willfulness is further evidenced by its continued reporting of the CELTIC/CONT account following Plaintiff's formal dispute, and by its furnishing of dispute-resolution notations — including "Account information disputed by consumer, meets FCRA requirements" and "Consumer disputes this account information" — suggesting accuracy despite the absence of any legitimate basis to verify the duplicated reporting as reflecting a separate and independent obligation owed by Plaintiff.

## COUNT II: Negligent Noncompliance With The FCRA Against Celtic
### (Violations of 15 U.S.C. §1681s-2(b))

46.     Plaintiff incorporates by reference each of the preceding paragraphs.

47.     Celtic's conduct constituted negligent noncompliance as a furnisher of information, thereby violating its duties under 15 U.S.C. § 1681s-2(b).

48.     Celtic failed to exercise reasonable care in its information furnishing practices and in its investigation processes upon receiving notice of Plaintiff's dispute, thereby breaching its duties owed to Plaintiff under the FCRA.

## COUNT III: Willful Noncompliance With The FCRA Against The CRAs
### (Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)

49.     Plaintiff incorporates by reference each of the preceding paragraphs.

50.     The CRAs are each a "consumer reporting agency" as defined by and subject to 15 U.S.C. § 1681a(f).

51.     Following Plaintiff's mailing of his dispute package on December 17, 2025, the CRAs received Plaintiff's notice of dispute concerning the inaccurate and duplicative information related to the Accounts appearing on his consumer reports.

52.     Pursuant to 15 U.S.C. § 1681i(a), upon receipt of Plaintiff's dispute, the CRAs were required to conduct a reasonable reinvestigation to determine the accuracy of the disputed information and record the current status of the disputed information, or delete the item from the file, within thirty (30) days of receiving the dispute.

53.     The CRAs failed to conduct a reasonable reinvestigation of Plaintiff's dispute.

54.     A reasonable reinvestigation would have included, at a minimum: (a) thoroughly reviewing all relevant information and documentation submitted by Plaintiff with his dispute, including his written explanation that the Accounts were being reported in a duplicated and misleading manner, causing the same underlying obligations to appear multiple times across his

7

consumer reports as if they were separate and independent debts; (b) promptly notifying Celtic of Plaintiff's dispute and providing Celtic with all relevant information received from Plaintiff; and (c) requesting from Celtic actual verifying documentation substantiating the existence of a legitimate and non-duplicative outstanding obligation separate and distinct from the collection tradelines already appearing on Plaintiff's consumer reports under LVNV Funding and Midland Credit Management for the same underlying accounts.

55.     The CRAs failed to review and consider all relevant information submitted by Plaintiff in connection with his dispute.

56.     The CRAs' failure to delete or correct the inaccurate information, or to accurately record the current status of the disputed information, as evidenced by their continued reporting of the Accounts as derogatory charge-offs following the completion of their reinvestigations, while simultaneously maintaining collection tradelines held by LVNV Funding and Midland Credit Management attributable to the same underlying obligations, demonstrates their failure to conduct a reasonable reinvestigation.

57.     The CRAs' failure to perform a reasonable reinvestigation after receiving Plaintiff's detailed and documented dispute was willful.

58.     The CRAs acted with knowledge of their statutory duties under 15 U.S.C. § 1681i, or in reckless disregard of those duties and Plaintiff's rights, as evidenced by their issuance of post-dispute notations, including "Account information disputed by consumer, meets FCRA requirements" and "Consumer disputes this account information", affirmatively re-certifying the accuracy of the disputed tradelines without any legitimate basis to verify that the duplicative reporting reflected separate and independent obligations owed by Plaintiff.

**COUNT IV: Negligent Noncompliance With The FCRA Against The CRAs**
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

59.    Plaintiff incorporates by reference each of the preceding paragraphs.

60.    The CRAs' conduct constituted negligent noncompliance with their duty to conduct a reasonable reinvestigation of disputed information under 15 U.S.C. § 1681i(a).

61.    The CRAs failed to exercise reasonable care in their reinvestigation process concerning Plaintiff's dispute of the Accounts.

**COUNT V: Willful Noncompliance With The FCRA Against The CRAs**
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy -**
**Violation of 15 U.S.C. § 1681e(b))**

62.    Plaintiff incorporates by reference each of the preceding paragraphs.

63.    Pursuant to 15 U.S.C. § 1681e(b), whenever a CRA prepares a consumer report, it must follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

64.    The CRAs failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

65.    The continued reporting of the Accounts as derogatory charge-offs, while simultaneously maintaining collection tradelines under LVNV Funding and Midland Credit Management attributable to the same underlying obligations, demonstrates the CRAs' failure to adhere to this statutory mandate. Specifically, the same Celtic obligation appeared on Plaintiff's consumer reports as no fewer than three separate derogatory tradelines; under the original CELTIC/CONT tradeline, under LVNV Funding (Original Creditor: Surge/Celtic Bank, $783.00), and under Midland Credit Management (Original Creditor: Celtic Bank, $761.00), creating the false appearance that Plaintiff owed multiple separate and independent debts arising from the same underlying account. This pattern of duplicative reporting, appearing across all three bureaus,

9

reflects a systemic failure to implement procedures capable of detecting and resolving duplicate tradelines attributable to the same originating obligation before compiling and disseminating consumer reports.

66. Reasonable procedures would include robust mechanisms to reconcile contradictory or duplicative information received from furnishers or generated within their own systems, and to flag and investigate account-level data reflecting the same originating account number appearing under multiple furnisher names with overlapping balances and derogatory designations.

67. The CRAs' failure to establish or follow such reasonable procedures was willful, representing a knowing failure to comply with their statutory duties or a reckless disregard for the accuracy of the information they compile and disseminate about consumers like Plaintiff.

**COUNT VI: Negligent Noncompliance With The FCRA Against The CRAS**
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy -**
**Violation of 15 U.S.C. § 1681e(b))**

68. Plaintiff incorporates by reference each of the preceding paragraphs.

69. The CRAs' conduct constituted negligent noncompliance with their duty to follow reasonable procedures to assure maximum possible accuracy of information in their consumer reports under 15 U.S.C. § 1681e(b).

70. The CRAs failed to exercise reasonable care in their consumer report preparation and accuracy assurance processes, as evidenced by their persistent reporting of the Accounts attributable to the same underlying obligations, and by their failure to detect, reconcile, or flag the resulting duplicative tradelines, which caused the same originating Celtic obligation to appear on Plaintiff's consumer reports as multiple separate derogatory debts, prior to disseminating Plaintiff's consumer reports to third parties.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where appropriate, for the following:

I.    Actual damages in an amount to be fully determined at trial, including but not limited to compensation for damage to creditworthiness and reputation, loss of credit opportunities on favorable terms, financial burden, and emotional distress, pursuant to 15 U.S.C. §§ 1681n(a)(1), 1681o(a)(1);

II.   Statutory damages in an amount ranging from $100 to $1,000 for each willful violation of the FCRA, as permitted under 15 U.S.C. § 1681n(a)(1)(A);

III.  Punitive damages in an amount to be determined at trial as may be allowed under 15 U.S.C. § 1681n(a)(2) for Defendants' willful and reckless violations of the FCRA;

IV.   Plaintiff's reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff requests a trial by jury on all issues so triable.

Dated: Brooklyn, New York
       March 31, 2026

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Cortlen Delva

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: spetroff@petroffamshen.com